## NEWBERRY v. BENNETT et al.

### (Circuit Court, S. D. California. March 26, 1889)

1. SALE—WARRANTY—EVIDENCE.

Plaintiff testified that in the negotiations for the sale of a horse worth $2,000, which he desired for breeding purposes, it was agreed that the warranty sued on, which was that the horse was a reasonably sure foal getter, should be given, and at the close of them, plaintiff executed deeds for the land which was exchanged for the horse, and that defendant at the same time executed the bill of sale of the same date containing the warranty. Defendant testified that he never agreed to give the warranty, and did not give the bill of sale and warranty at the time of the completion of the sale, but that several days after, plaintiff asked for a bill of sale as a favor, and to accommodate him defendant made the bill of sale, using a blank therefor, and not noticing that it contained the warranty; that he had two forms of bills of sale, one of which contained a warranty and the other did not, and that he inadvertently used the former. Defendant was in the habit of giving a bill of sale and warranty for horses sold. Held, that the evidence showed the execution of the bill of sale and warranty at the time of the sale.

2. SAME—DAMAGES.

Defendant having agreed to replace the horse on delivery of it to him in case it should prove barren, and ample evidence of its unfitness for breeding purposes having been given in the three months following the purchase, plaintiff should have then returned it, and cannot recover expenses incurred upon it after that time.

At Law.

*Curtis & Otis,* for plaintiff.

*Lucien Shaw* and *W. T. Williams,* for defendants.

Ross, J. This action is founded upon a guaranty contained in a bill of sale executed by defendants to the plaintiff for a Clydesdale stallion called "Scotland's King," which reads as follows:

"We hereby guaranty the above-named horse to be a reasonably sure foal-getter, with proper care and handling. In case he should prove barren we agree to replace him with another horse of same breed and price, upon delivery to us of above-named horse, if as sound and in as good condition as when purchased of us."

While the bill of sale expresses a consideration of $3,000, it appears from the evidence in the case that the horse was in fact transferred to the plaintiff in exchange for two pieces of land, one situated in the state of Minnesota and the other in Dakota, conveyed by plaintiff to the defendants. That the horse did not prove a reasonably sure foal-getter or any foal-getter at all, is, from the evidence, very clear. It is claimed for the defendants that he did not receive from plaintiff proper care and handling, and that the fact that he would take no notice of mares was occasioned by such neglect. I do not think that a fair deduction from the testimony. The plaintiff caused a good stable to be built for the horse, and had an experienced man constantly employed in charge of him. He was well groomed, and, although not fed upon some of the food mentioned by some of the witnesses for defendants as being best for stallions, he was given an abundance of the food commonly fed in this country, and upon which other stallions of the same breed do well here, as stated by a witness for the plaintiff, and upon which this particular horse kept in good flesh. I am satisfied from the evidence that the defect in the horse cannot be attributed to a want of proper care or handling on plaintiff's part. Proving barren, the horse was returned by the plaintiff and tendered to defendants, with a demand that they replace him with another horse of the same breed and price. Defendants refused to receive the horse, or to comply with the demand, claiming— *First*, that they gave no guaranty; and, *secondly*, that the horse was not then as sound and in as good condition as when purchased by the plaintiff. I think the evidence shows that he was in substantially the same condition when returned as when purchased.

But the first objection made by defendants to the tender goes to the principal point relied upon in defense of the action. It is claimed by defendants that the guaranty was not executed at the time of the sale, but subsequently, and without consideration; and upon this point the testimony of the plaintiff and of the defendant Bennett is in direct conflict. Both of these parties made a good appearance upon the witness stand, and were apparently testifying truthfully. Yet the testimony of both cannot be true. In brief, that of the plaintiff on this point is that in the negotiation concerning the horse the agreement with defendants was that they should give the guaranty in question, and that at the time of the closing of the trade plaintiff executed to defendants deeds for the land, and at the same time the elder Bennett (with whom the business was conducted) executed to him (plaintiff) the bill of sale and guaranty. Bennett positively denies the statement of the plaintiff in these particulars, and testifies that he never agreed to give a guaranty, and did not give a bill of sale or guaranty at the time of the consummation of the sale; that several days after its consummation and after his receipt of the deeds in payment for the horse, plaintiff came to him, and asked him as a favor to give him a bill of sale for the horse, and that to accommodate plaintiff he (Bennett) went to his room, and got a blank bill of sale and signed it, not noticing that it contained a guaranty, and gave it to the plaintiff; that defendants, whose business is that of importing and

selling stallions, have two forms of bills of sale, one with and the other without a guaranty, and that in this instance a blank with the guaranty was used through inadvertence. In deciding upon such conflicting testimony of witnesses apparently truthful the court must look at the probabilities of the case. In the first place, it is not probable that the plaintiff would have asked as a favor that which he had the right to demand as a right. In the next place, the purpose for which the plaintiff wanted the horse was that of breeding. It was reasonable and probable, therefore,—especially in view of the fact that the horse was a costly one,—that plaintiff should require a guaranty that he should prove a reasonably sure foal-getter, if defendants would give such guaranty; and that they were in the habit of giving such guaranties in cases of sale was admitted by the witness Bennett. This witness also admitted that he usually executed a bill of sale for the horses that he sold. It would therefore have been unusual for him not to have executed such an instrument for the horse in question, and, considering his value, the purpose for which he was purchased, and the fact that at the time of the consummation of the sale the plaintiff executed to defendants deeds in writing for the land, the probabilities, in my opinion, confirm the plaintiff's testimony to the effect that the bill of sale with the guaranty was executed by defendants at the time of the sale and as a part of it. And this conclusion is further sustained by the circumstance that the bill of sale and the deeds bear the same date.

But one other question remains to be determined, and that is the amount of damages to which plaintiff is entitled. The counsel for the respective parties are agreed that the true measure of damages is the excess of the value the horse would have had if he had been a reasonably sure foal-getter, over his value in his barren condition, and, in addition, a fair compensation for the loss incurred by the plaintiff in his effort in good faith to use him for the purpose for which he was purchased. I think the evidence shows the cash value of the horse at the time of sale was $2,000, and that in his barren condition, as subsequently ascertained, his value was and is $250. The plaintiff received the horse about the 1st of February and from that time on, and especially during the months of April and May, repeated efforts were by plaintiff's direction made to test the capacity of the horse, and ample evidence given of his unfitness for breeding purposes. The horse should then have been returned by plaintiff to defendants. For expenses subsequently incurred I do not think plaintiff should be allowed. For the board and wages of the man employed to care for the horse during the months of February, March, April, and May the plaintiff will be allowed at the rate of $55 per month, aggregating $220. It results that plaintiff is entitled to judgment against defendants for the sum of $1,970 and costs. Ordered accordingly.